26CA0102 Peo in Interest of Kreidler 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0102
Pueblo County District Court No. 23MH371
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Richard Kreidler,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Richard Kreidler, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him. We affirm.

## I.     Background

¶ 2     In 2022, Kreidler was admitted to the hospital after being found incompetent to proceed in a criminal case. He was diagnosed with chronic schizoaffective disorder, bipolar type. A year later, Kreidler was found to be permanently incompetent to proceed because of ongoing psychotic symptoms, and his criminal charges were dismissed. Since that time, Kreidler has remained in the hospital on a civil commitment because of his continued intense response to internal stimuli and associated delusional beliefs. In January 2026, Kreidler's certification for long-term mental health treatment under section 27-65-110, C.R.S. 2025, was renewed.

¶ 3     In December 2025, the People petitioned the district court to review Kreidler's refusal of treatment. The court held an evidentiary hearing, at which the psychiatrist supervising his care testified. The psychiatrist described Kreidler's mental health disorder and accompanying symptoms. He also described the requested medications — Clozapine, Zyprexa (olanzapine), and Cobenfy

1

(zanomeline/trospium) — and explained their possible side effects. And he opined that the medications were necessary to treat Kreidler's symptoms.

¶ 4 At the conclusion of the hearing, the district court granted the petition and issued an order authorizing the involuntary administration of the requested medications.

## II. Applicable Law and Standard of Review

¶ 5 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to themselves or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

¶ 6 When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district

court's legal conclusions de novo and defer to its factual findings if they have record support. *People v. Marquardt*, 2016 CO 4, ¶ 8. We view the evidence as a whole and in the light most favorable to the People as the petitioning party. *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. As the fact finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7.

### III. Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 7 Kreidler contends that the evidence was insufficient to prove the fourth *Medina* element — that his need for the requested medications is sufficiently compelling to override his bona fide and legitimate interest in refusing to take them. We disagree.

¶ 8 In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the

state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 9     Kreidler agrees that the district court acknowledged that his reason for refusing the requested medications — avoiding adverse side effects — was bona fide and legitimate. *See Uwayezuk*, ¶ 62 (a desire to avoid adverse effects can constitute a bona fide and legitimate reason to refuse medication). However, he doesn't present any specific argument regarding the court's balancing of his interests against the State's. Instead, he merely asserts that the court "erred in concluding that the asserted need for involuntary medication outweighed these substantial medical interests."

¶ 10     Reviewing the record as a whole and in the light most favorable to the People, we conclude that sufficient evidence supports the conclusion that Kreidler's need for treatment outweighs his interest in refusing it. The psychiatrist's testimony establishes that (1) the hospital is cognizant of the serious side effects (including Parkinsonian-like symptoms caused by higher doses of clozapine) that Kreidler has experienced; (2) Cobenfy is being requested because it doesn't affect the dopamine system and therefore should not cause any Parkinsonian symptoms; (3) if

Kreidler responds well to Cobenfy, he could taper off clozapine altogether; (3) without treatment, Kreidler will continue to suffer the symptoms of his mental illness, there will be a likely long-term deterioration of his mental condition, he will be at increased risk of danger to others, and would remain in the hospital indefinitely; and (4) Kreidler's need for the requested medications outweighs his interest in refusing them. We conclude that this evidence clearly and convincingly supports the court's determination that Kreidler's interest in refusing medication must yield to the State's interest in preserving his health and protecting the safety of those in the hospital. *See Medina,* 705 P.2d at 974.

¶ 11   In reaching this conclusion, we note that the hearing transcript is incomplete. However, Kreidler doesn't assert that the missing portion of the hearing transcript contains evidence requiring reversal. Nor has he sought to settle the record. *See* C.A.R. 10(g)(1) ("If any difference arises as to whether the record truly discloses what occurred in the trial court or a portion of the record" isn't in the trial court's possession, the difference must be submitted to and settled by the trial court, and the party moving to settle the record must file a motion to stay the appellate court

proceedings while the record settles). When "the record is silent the law presumes regularity." *People in Interest of I.S.*, 2017 COA 155, ¶ 11 (quoting *McClain v. People*, 141 P.2d 685, 686 (Colo. 1943)); *see LePage v. People*, 2014 CO 13, ¶ 15 ("According to the presumption of regularity, appellate courts presume that the trial judge did not commit error absent affirmative evidence otherwise."). Thus, absent evidence to the contrary, we presume that the missing portion of the transcript would show that the district court did not err.

## IV.   Disposition

¶ 12     We affirm the order authorizing the involuntary administration of medication.

JUDGE J. JONES and JUDGE LUM concur.

6