■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIAM BENOIT, Appellant.— Appeal (1) from a judgment of conviction rendered by the County Court, Kings County, sentencing appellant, after he had been found guilty by a jury of the crime of possession of burglar's instruments as a felony in violation of section 408 of the Penal Law, to serve from three and a half to seven years, and (2) from each and every intermediate order therein made. Judgment reversed on the law and the facts and a new trial ordered. The indictment charges that, on a date specified, appellant had in his possession, certain tools, "to wit: gloves, torch, masks, guages [*sic*] and hose attached, tubing, funnel, torches with hose, chisels, cleaver, wrenches, bags, tank of gas, scissor, lead mallet, punches, flashlights, bolt cutters, hose fitting, round glass in brass fixture and pinch bar, adapted, designed and commonly used for the commission of burglary and larceny, under circumstances evincing an intent to use and employ them in the commission of a crime, and knowing that the same were intended to be so used." Under the statute defining the offense (Penal Law, § 408), a finding of guilt must rest on proof of three distinct elements: (1) possession by the defendant of any of the tools mentioned, (2) adaptability, design or common use of the tools for the commission of burglary, larceny or other crime, and (3) circumstances "evincing an intent to use or employ, or allow the same to be used or employed, in the commission of a crime, or knowing that the same are intended to be so used". The testimony established that tools of the kind described in the indictment were found in appellant's possession. All of the tools were received in evidence and were spread out and exhibited to the jury. Appellant's counsel stated in the jury's presence that he did not question, but conceded, that the tools were adapted and could be used for the commission of the crime of burglary. In addition, a police officer testified that although the tools "could be used" for a legitimate purpose, they "are adapted" and "are commonly used by burglars." The only real question, therefore, was whether appellant's possession of the tools was under circumstances evincing the criminal intent or knowledge required by the third element of the offense as stated above. Upon that issue it cannot be said as a matter of law that the evidence was insufficient to warrant submission of the case to the jury. The trial court, however, committed prejudicial error which requires the granting of a new trial. Over repeated objections and motions for a mistrial, the trial court directed to be rolled into the courtroom, and to be placed before the jury as exhibits, a safe, a safe door and a burned-out safe combination — in no way connected with the appellant — and insisted upon permitting the police officer to perform a series of actual demonstrations showing the jury how to break and crack open the safe with some of the

tools found in appellant's possession. Using the lead mallet, a punch, a chisel, a crowbar and other tools, the police officer dramatically demonstrated to the jury various methods that burglars employ to open a safe. He thus performed a burglar's "rip job", then a "punch job", then a "chop job", and finally a "burn job". These demonstrations, said the trial court in its instructions to the jury, were performed "so that the Inspector could demonstrate before your eyes how a safe-cracking job could be accomplished by the use of these tools, or some of them, and in sum, to show you that these tools were adapted for the purpose described." Demonstrations of crime, however, unless *absolutely necessary* to make out a case, are to be scrupulously avoided. Their only effect is to inflame the minds of the jurors and to deprive a defendant of the fair trial to which he is entitled (cf. *People* v. *Silverman*, 252 App. Div. 149, 172 and cases there cited). In view of the obvious character of the tools involved in the instant case, the concession by appellant's counsel as above noted, and particularly the police officer's testimony that the tools were adapted and commonly used for the commission of burglary, the "safe-cracking" demonstrations were wholly unnecessary. They were not needed to aid the jury in understanding scientific or abstruse matter otherwise difficult to comprehend or evaluate. No juror could fail to understand that a crowbar, chisel, hammer and acetylene torch could be used to commit a burglary or other crime. It is also pertinent to note that "'The practice of calling out evidence for one purpose, apparently innocent, and using it for another, which is illegal, is improper; and, if it is clear and manifest that the avowed object is colorable merely, its admission is error'" (*People* v. *Zackowitz*, 254 N. Y. 192, 200). Here, the dramatic demonstrations of criminality, ostensibly performed to establish adaptability of the tools for committing burglary, were bound to influence the jury unlawfully in their consideration of the third element of the offense, namely, appellant's intent to use the tools or knowledge that they were intended to be used for committing a crime. This effect upon the jury could not have been obliterated by the trial court's additional instruction that no juror was to be prejudiced against the appellant because of the demonstrations showing how a crime could be committed with the appellant's tools. Careful consideration of all the circumstances in this case leads to the inescapable conclusion that the "avowed object" of the demonstrations was "colorable merely". In any event, the prejudicial effect of the demonstrations far outweighed any possible relevancy and could not be neutralized by admonitions to the jury. In the interests of justice there should be a new trial. No separate appeal lies from the intermediate orders, which have been reviewed on the appeal from the judgmnt of conviction. Wenzel, Ughetta, Hallinan and Kleinfeld, JJ., concur; Nolan, P. J., dissents and votes to affirm, with the following memorandum: Our problem would be easier to solve if we could decide with certainty that the jury would have found on the evidence presented, exclusive of the demonstrative evidence complained of, that the tools and implements found in appellant's possession were adapted for the commission of crime. I concur in the conclusion reached by the majority that ample evidence was produced, exclusive of that complained of. to establish that fact. I am unable to agree, however, that the District Attorney was required under the circumstances disclosed to rest on that evidence, on the assumption that the jury would so find, and to refrain from offering other competent evidence in his possession which established that element of his case beyond the possibility of a doubt. It is true that appellant's attorney attempted to concede on trial the character of the tools

found in appellant's possession. That concession was rejected, however, and the County Judge ruled that the question was one of fact to be determined by the jury and that the District Attorney was required, despite the concession, to prove his case. That ruling might have been questioned (cf. *People* v. *Walker*, 198 N. Y. 329, 335; *People* v. *Jackerson*, 247 N. Y. 36, 41). It was not questioned, however. Appellant's counsel, although objecting to the evidence about to be introduced, acquiesced in the ruling when it was made and later, in summation, referred to it as a proper one. Under the law of the case, thus established, the District Attorney was put on notice that the appellant would claim, and the court would rule, that the attempted concession relieved him of none of his burden of proof that the tools in question were adapted for a criminal purpose. Under the circumstances, appellant may not complain that the District Attorney offered all the competent evidence available, bearing on that question. The evidence complained of was competent to corroborate the testimony of the expert called by the People that the tools in question could be used in the commission of a burglary, and in my opinion did not unduly prejudice appellant's case. The jurors were properly instructed as to its purpose and the limits of its probative value. I do not believe that we may properly say that they were incapable of understanding or unwilling to follow the instructions given them, or that appellant was deprived of a fair trial (cf. *People* v. *Buddensieck*, 103 N. Y. 487; *People* v. *Singer*, 300 N. Y. 120; *People* v. *Workman*, 308 N. Y. 668; *Taylor* v. *United States*, 89 F. 954; *People* v. *Hope*, 62 Cal. 291). Competent evidence which has a reasonable tendency to prove some material fact or shed some light on some material inquiry should not be rejected because it may have a tendency to cause an influence beyond the strict limits for which it is admissible. In any event, if it be assumed that the fact that the tools found in appellant's possession were adapted for the commission of crime was so conclusively established, independently of the demonstrative evidence that such evidence was unnecessary, it is difficult to see how appellant's substantial rights were impaired. The circumstances under which appellant was arrested with the tools in his possession and that of his companion, were such that the jury could hardly have arrived at any other conclusion than that they were intended to be used in the commission of crime. If it was error to receive the evidence, the error under such circumstances may be disregarded (*People* v. *Silverman*, 181 N. Y. 235, 242; *People* v. *Bloodgood*, 251 App. Div. 593, 601; *Code Crim. Pro.*, § 542).